IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

UNITED STATES OF AMERICA,

    v.                                                       Criminal No. 3:15mj122 (DJN)

DEREK MICHAEL CHANDLER,
    Defendant.

**MEMORANDUM OPINION**

On June 12, 2015, Defendant Derek Michael Chandler ("Defendant") pled guilty to one count of larceny of government property in violation of 18 U.S.C. § 641. On December 11, 2015, the undersigned, then serving as a United States Magistrate Judge, sentenced Defendant to 11 months' imprisonment, 12 months' supervised release, a $25 special assessment and $1,264 in restitution. Defendant left prison in September 2019. He violated the terms of his supervised release in December 2019. On February 18, 2020, the Court conducted a final revocation hearing during which Defendant admitted the violations. The Court revoked his term of supervision and sentenced Defendant to 12 months' imprisonment with credit for time-served since his December 2019 arrest.

This matter now comes before the Court on Defendant's Motion for Compassionate Release (ECF No. 52), which moves pursuant to 18 U.S.C. § 3582(c)(1)(A) for Defendant's release in light of his medical conditions and the outbreak of Coronavirus Disease 2019 ("COVID-19").[1] For the reasons set forth below, the Court DENIES Defendant's Motion (ECF No. 52).

---

[1] On July 2, 2020, Defendant, proceeding *pro se*, filed his initial Motion for Compassionate Release (ECF No. 47). The Court then appointed counsel for Defendant, who

## I. BACKGROUND

### A. Defendant's Underlying Offense

On April 27, 2015, officers received a report of an unknown black male driving a blue SUV and striking two other vehicles in an attempt to leave the Fort Lee Army and Air Force Exchange Service ("AAFES") gas station parking lot. (August 19, 2015, Presentence Investigation Report ("PSR") (ECF No. 16) ¶ 12.) The vehicle left the parking lot and ran through two red lights. (PSR ¶ 12.) Officers later identified the driver of the vehicle as Defendant. (PSR ¶ 12.) Further investigation revealed that on April 24, 25, 26 and 27, 2015, Defendant had removed various alcohol bottles from the shelves of the AAFES gas station, removed their bar code stickers and concealed the items in his clothing before exiting the store. (PSR ¶ 12.)

### B. Procedural History

On April 28, 2015, the Court issued an arrest warrant for Defendant, and Defendant made his initial appearance on May 15, 2015. (ECF Nos. 2, 4.) On June 12, 2015, Defendant pled guilty to one count of larceny of government property in violation of 18 U.S.C. § 641. (PSR ¶ 9.) On December 11, 2015, the undersigned sentenced Defendant to 11 months' imprisonment, 12 months' supervised release, a $25 special assessment and $1,264 in restitution. (ECF No. 26.) The Court ordered that Defendant serve his sentence consecutive to any sentence that he received in the pending state case matter. (ECF No. 26.)

---

filed a renewed Motion for Compassionate Release (ECF No. 52) on Defendant's behalf. Because Defendant's counsel has reviewed Defendant's initial arguments and incorporated them into Defendant's renewed Motion (ECF No. 52), for the same reasons that the Court denies Defendant's renewed Motion, the Court also DENIES Defendant's initial Motion (ECF No. 47).

2

Following Defendant's release from prison, on December 17, 2019, Defendant's probation officer petitioned for Defendant's arrest, citing four violations of Defendant's supervised release, namely: (1) his December 5, 2019, arrest for felony shoplifting in Prince George County; (2) the return of a urine sample that tested positive for cocaine; (3) his repeated failure to appear for substance abuse treatment at BAC; and, (4) his failure to report for drug testing on three occasions as directed by his probation officer. (Pet. on Supervised Release ("2019 Pet.") (ECF No. 30) at 4.) On February 18, 2020, Defendant pled guilty to violating the terms of his supervised release, and received a sentence of 12 months' imprisonment with no supervision to follow. (ECF No. 45.) Defendant received credit for time-served from his December 5, 2019 arrest. (ECF No. 45.)

### C. Defendant's Motion for Compassionate Release

After Defendant began serving his sentence, the first cases of COVID-19 emerged in the United States, including within the federal prison system. *See* Fed. Bureau of Prisons, COVID-19 Coronavirus, www.bop.gov/coronavirus (showing updated figures on the number of inmates and prison staff who have tested positive for COVID-19). In response, on July 31, 2020, Defendant moved for compassionate release pursuant to § 3582(c)(1)(A). (Mem. In Supp. Of Mot. For Compassionate Release ("Def.'s Mot.") (ECF No. 52) at 1-2.)

In support of his Motion, Defendant argues for early release, because his medical condition renders him particularly susceptible to COVID-19. (Def.'s Mot. at 1.) Specifically, Defendant avers that he suffers from asthma, which he maintains increases the likelihood of COVID-19 complications should he contract the disease. (Def.'s Mot. at 1-2.) Defendant further contends that he has a particularized risk of contracting COVID-19, because the Bureau of Prisons ("BOP") facility that houses Defendant has reported incidences of the disease. (Def.'s

3

Mot. at 15-20.) Specifically, Defendant notes that while FCI Petersburg Medium — the facility where Defendant is confined — has only reported one positive test among its inmate population, it has only recently begun testing and has only tested 133 out of 1,446 inmates. (Def.'s Mot. at 16-17.) Defendant argues that the facility actually has a greater number of positive tests and that a high risk exists that these numbers will continue to grow given that the prison setting makes the recommendations of the CDC more difficult to achieve. (Def.'s Mot. at 16-17.)

As for whether his release comports with the relevant § 3553(a) factors and policy statements, Defendant argues that he will not present a danger to the community if released, because of his status as a non-violent offender. (Def.'s Mot. at 20.) Defendant notes that he has maintained clear conduct during his incarceration, although the COVID-19 pandemic has limited his opportunities to take advantage of prison programming. (Def.'s Mot. at 20-21.) Defendant avers that he has the support of his wife and family should the Court order his release. (Def.'s Mot. at 21.).

Finally, Defendant argues that he has a viable release plan, which involves living with his wife and her son. (Def.'s Mot. at 21.) He mentions his wife's former role as a correctional officer and her willingness to provide transportation as needed. (Def.'s Mot. at 21.) A probation officer in the Chesterfield Office of State Probation and Parole states that, upon his release, Defendant will receive a case manager and have the opportunity to participate in a number of substance abuse and mental health programs. (Def.'s Mot. at 21-22.)

The Government filed its Response to Defendant's Motion on August 17, 2020, (Gov't's Resp. in Opp. to Def.'s Mot. for Compassionate Release ("Gov't Resp.") (ECF No. 56)). Pointing to Defendant's criminal record, his misconduct while on supervision and lack of a viable release plan, the Government opposes Defendant's motion.

4

## II. STANDARD OF REVIEW

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify a criminal defendant's sentence for "extraordinary and compelling reasons" "upon motion of the Director of the Bureau of Prisons" or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). By its plain language, § 3582(c)(1)(A) requires defendants to first exhaust administrative remedies or wait thirty days after requesting that the warden of their facility file a motion for a sentence reduction; however, courts have waived this requirement when enforcing it would prove futile. *See, e.g., Washington v. BOP*, 2019 WL 6255786, at *2 (N.D. Ohio July 3, 2019) (explaining in addressing motion for recalculation of good time credit under First Step Act that "[t]he failure to exhaust administrative remedies may be excused if seeking administrative remedies would be futile").

Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." In determining what constitutes "extraordinary and compelling reasons," courts have considered related policy statements under the United States Sentencing Guidelines, though such statements are not binding. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019) (considering what the Sentencing Guidelines defined as "extraordinary and compelling reasons"). These policy statements provide that a defendant's medical conditions, age, family circumstances or other circumstances, either singly or in combination, can prove

sufficiently extraordinary and compelling to justify compassionate release. USSG § 1B1.13, application notes 1(A)-(D).

However, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A). Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age and family circumstances]." § 1B1.13, application note 1(D).

Relevant here, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling* (*Feiling I*), 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (citing *United States v. Dungee*, 2020 WL 1666470, at *2 (W.D. Va. Apr. 4, 2020); *United States v. Edwards*, __ F. Supp. 3d __, 2020 WL 1650406, at *5 (W.D. Va. Apr. 2, 2020)). "To

6

establish a particularized risk of contracting COVID-19, an inmate must first demonstrate that cases of COVID-19 have emerged at his facility." *United States v. Feiling (Feiling II)*, 2020 WL 5047064, at *7 (E.D. Va. Aug. 26, 2020). However, even then, "COVID-19 and an inmate's susceptibility to it do not justify compassionate release when . . . the inmate refuses additional protections afforded to him by the BOP without good cause and continues to voluntarily place himself in an environment in which he faces the highest risk of contracting the disease." *Id.*

Even if extraordinary and compelling reasons exist for a defendant's compassionate release, § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2). Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or the community if released.[2] USSG

---

[2] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical or mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

§ 1B1.13(2). And the Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated, alone, proves insufficient to warrant a sentence reduction. § 1B1.13, application note 3.

Ultimately, the Court may grant compassionate release only after a defendant establishes an extraordinary and compelling reason for his release and the Court finds that the defendant's release would not undermine the relevant § 3553(a) factors or any relevant policy statements issued by the Sentencing Commission.

### III. ANALYSIS

#### A. Defendant Does Not Demonstrate that Extraordinary and Compelling Reasons Entitle Him to Compassionate Release.

Defendant must show that his circumstances present "extraordinary and compelling reasons" entitling him to compassionate release. Defendant argues that the heightened risk of contracting COVID-19 in prison coupled with his preexisting condition could result in severe illness or death. (Def.'s Mot. at 9-10.) Defendant contends that his asthma, a chronic respiratory disease, puts him at risk of developing more severe symptoms should he contract the disease. (Def.'s Mot. at 11-12.)

In response to Defendant's Motion, the Government argues that Defendant has not established extraordinary and compelling reasons entitling him to compassionate release. (Gov't Resp. at 9.) Specifically, the Government contends that Defendant has established neither a particularized susceptibility to COVID-19, nor a heightened risk of contracting the disease at his prison facility. (Gov't Resp. at 10-13.) The Government maintains that Defendant's claim of asthma as an extraordinary and compelling reason relies on his own statements that he "has to use his inhaler more often and needs a refill," and ignores the directives of his prescription that he "should not use daily" and his own contentions that his inhaler use "is dependent on the

8

weather." (Gov't Resp. at 11-12.) Likewise, the Government avers that Defendant's medical records fail to establish that Defendant suffers from decreased lung function or that his asthma has become so persistent as to qualify as moderate or severe. (Gov't Resp. at 12.) The Court agrees with the Government.

As a threshold matter, neither party contends that Defendant has failed to exhaust his administrative remedies under § 3582(c)(1)(A). Indeed, Exhibit 1 to Defendant's Motion shows that Defendant submitted a request for compassionate release to the warden at FCI Petersburg on May 12, 2020, and received a denial letter on May 22, 2020. (Ex. 1 to Def.'s Mot. (ECF No. 52-1) at 1.) Accordingly, the Court finds that Defendant has exhausted the administrative remedies outlined under § 3582(c)(1)(A) and that the Court has jurisdiction to consider the merits of Defendant's Motion.

To that end, the Court finds that Defendant has not established an extraordinary and compelling reason for his release. As mentioned, "[i]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *Feiling I*, 453 F. Supp. 3d at 841 (citations omitted). Here, Defendant has not made the initial showing of a particularized susceptibility to COVID-19.

To establish a particularized susceptibility to COVID-19, courts have required defendants to provide evidence that they suffer from a medical condition identified by the Centers for Disease Control and Prevention ("CDC") as a COVID-19 risk factor. *See, e.g., United States v. Beahm*, 2020 WL 4514590, at *2 (E.D. Va. Aug. 5, 2020) (finding the defendant particularly susceptible to COVID-19, because the defendant suffered from type II diabetes, which the CDC

9

has identified as a COVID-19 risk factor); *United States v. White*, 2020 WL 3442171, at *5 (E.D. Va. June 23, 2020) (finding that the defendant had a particularized susceptibility to COVID-19, because he suffered from several medical conditions identified as COVID-19 risk factors). Indeed, a general fear of contracting COVID-19, without a sufficient basis for that fear, does not provide an extraordinary and compelling reason for a defendant's release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society . . . cannot independently justify compassionate release."); *Feiling I*, 453 F. Supp. 3d at 841 ("Notably, 'the *fear* of contracting a communicable disease' proves insufficient to justify a sentence modification." (quoting *United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020) (emphasis added))).

In the instant case, Defendant argues that he has a particularized susceptibility to COVID-19 due to his asthma. (Def.'s Mot. at 11-12.) However, the Court's review of Defendant's health records reveals that Defendant's condition proves not so severe as to establish his particularized susceptibility to COVID-19.

For one, although BOP medical staff list asthma as one of Defendant's conditions and prescribe him an inhaler, Defendant's medical records make little note of this condition aside from Defendant's own claim that he has to use his inhaler "more often" and that his condition "depend[s] on the weather." (Bureau of Prisons Health Servs. Rec. ("Med. R.") (ECF No. 59) at 5, 7.) In fact, Defendant's prescription states, "don't use daily," and commands Defendant to take only "as needed." (Med. R. at 8, 36.) The Court finds that the medical evidence does not support a finding that Defendant's asthma renders him particularly susceptible to COVID-19. Although medical providers have diagnosed Defendant with asthma, his condition has remained mild and intermittent. Certainly, Defendant's asthma increases the likelihood that he will

10

become symptomatic if he contracts COVID-19, but the medical records do not indicate that Defendant's susceptibility constitutes an extraordinary and compelling reason for his compassionate release.

### B. The Court Finds that the § 3553(a) Factors Do Not Support Defendant's Release.

The Court also finds that the § 3553(a) factors do not support Defendant's release. In support of his Motion, Defendant argues that he will not present a danger to the community if released, because he qualifies as a non-violent offender and has maintained clear conduct while incarcerated. (Def.'s Mot. at 20.) Defendant further contends that he has a viable release plan, which includes living with his wife and her son in a two-bedroom home. (Def.'s Mot. at 21.) Defendant's wife has arranged Defendant's medical care and insurance coverage, and she avers that she can provide transportation to her husband as needed for medical appointments, probation meetings and AA and NA meetings upon his release. (Def.'s Mot. at 21.) A probation officer with the Chesterfield Office of State Probation and Parole maintains that Defendant has eligibility for a number of rehabilitative programs through the Chesterfield Community Service Board. (Def.'s Mot. at 21-22.)

The Government argues that Defendant's release would undermine the relevant § 3553(a) factors and policy statements. (Gov't Resp. at 15.) The Government asserts that Defendant remains a danger to the community, noting that his criminal history placed him in Criminal History Category VI when the Court sentenced him in 2015. (Gov't Resp. at 16.) Specifically, Defendant has numerous theft-related offenses starting at age 15 and ending with his latest charges, acquired while under the Court's supervision. (Gov't Resp. at 16.) The Government argues that Defendant's risk of recidivism remains high, a factor that cautions against his early release. (Gov't Resp. at 16-17.)

The Court agrees with the Government and finds that the relevant § 3553(a) factors do not support Defendant's compassionate release. For one, Defendant's instant offense follows an extensive criminal history, which started at age 15. (PSR ¶ 28.) Specifically, his criminal history includes multiple theft-related offenses, evincing a lack of respect for the law and ability to learn from his past. (PSR ¶ 39-62.) The fact that Defendant violated the conditions of his supervised release by committing acts similar to his underlying charge only serves to further underline this conclusion. (2019 Pet. at 2.) Defendant's extensive criminal history also includes several violent offenses, including several convictions for domestic assault, one for assault and battery and one for assault on a police officer. (PSR ¶¶ 39, 47, 53, 57.) Defendant's plan for release does little to influence this analysis.

Together, both the nature and circumstances of Defendant's underlying offense and his criminal history weigh against his release. Ultimately, even if extraordinary and compelling reasons did exist for Defendant's compassionate release, the Court, in its discretion and after considering the relevant § 3553(a) factors and policy statements, finds that releasing Defendant at this time would not adequately protect the public, promote respect for the law, deter Defendant and others from engaging in similar conduct or reflect the seriousness of Defendant's offense. Accordingly, the Court DENIES Defendant's Motion for Compassionate Release.

### IV. CONCLUSION

For the reasons set forth above, the Court DENIES Defendant's Motion for Compassionate Release (ECF No. 52). An appropriate Order shall issue.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: October 19, 2020

13